UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW SAVKA,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:23-cv-650

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act both before and after he attained age 18.[1] The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **reverse the Commissioner's decision and remand the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).**

---

[1] Consistent with Plaintiff's usage in his brief, the Court will use Plaintiff's preferred he/him pronouns. (ECF No. 10 at PageID.687 n.1.)

## I. STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## II. PROCEDURAL POSTURE

On December 1, 2020, Plaintiff's mother filed an application for SSI on Plaintiff's behalf, as he was then an individual under age 18. (PageID.119, 234–43.) Plaintiff alleged disability based on autism, obsessive-compulsive disorder, depression, social deficits, dangerous behaviors, and suicide attempts. (PageID.119.) Plaintiff attained age 18 while his application was pending. Plaintiff's application was denied on initial review and rehearing, after which he requested a hearing before an Administrative Law Judge (ALJ). On June 23, 2022, ALJ Kevin Himebaugh held an online video administrative hearing at which Plaintiff, his mother, Heather Perez, and Robert Bond, an impartial vocational expert (VE), testified. (PageID.63–93.) On July 6, 2022, the ALJ issued a written decision finding that : (1) Plaintiff was not disabled prior to attaining age 18; and (2) Plaintiff was not disabled from the date he reached age 18 through the date of the decision. (PageID.32–57.) The Appeals Council denied Plaintiff's request for review on April 25, 2023. (PageID.16–18.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on June 23, 2023.

## III. ANALYSIS OF THE ALJ'S DECISION

### A. Plaintiff's Claim for SSI While under Age 18

Federal law provides that an "individual under the age of 18" will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child satisfies this standard, the Commissioner must evaluate the claim pursuant to a three-step sequential process. 20 C.F.R. § 416.924(a).

In the first step, if the ALJ determines that the child is engaged in substantial gainful activity, he cannot be found to be disabled. 20 C.F.R. § 416.924(b); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). If the child is not engaged in substantial gainful activity the analysis proceeds to step two, at which point the ALJ must determine whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. If the child does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. § 416.924(c). If the ALJ determines that the child suffers from a severe impairment, or combination of impairments, the analysis proceeds to step three, at which point the ALJ must determine whether the impairment(s) "meet, medically equal, or functionally equal" one of the impairments identified in the Listing of Impairments. 20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125. In making this determination, the ALJ must consider the combined effect of all medically determinable impairments, even those that are not severe. *See* 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c).

The ALJ found that because Plaintiff was born on June 11, 2003, under the applicable regulations, he was an adolescent on December 1, 2020—the date the application was filed. (PageID.37.) After determining that Plaintiff had not engaged in substantial gainful activity since the application date, the ALJ proceeded to the next step and found that he suffered from the following severe impairments: (1) depression; (2) anxiety; (3) autism spectrum disorder; (4) impulse control disorder; (5) neurodevelopmental disorder; (6) gender dysphoria; and (7) body dysmorphic disorder. (*Id.*) At the third step, the ALJ determined that Plaintiff's impairments did not, individually or in combination, meet or medically equal any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.37–39.)

The ALJ further determined that Plaintiff's impairments did not functionally equal in severity any impairment identified in the Listing of Impairments. (PageID.39–48.) To determine whether a child claimant suffers from an impairment which is the functional equivalent of a listed impairment, the ALJ must evaluate how the child functions in each of six domains of functioning described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(a)–(b). To be considered disabled, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities, while an "extreme" limitation is one which very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" limitation means "more than moderate" but "less than extreme." 20 C.F.R. 416.926a(e)(2)(i). The six domains of functioning are:

(i) acquiring and using information,

(ii) attending and completing tasks,

(iii) interacting and relating with others,

(iv) moving about and manipulating objects,

(v) caring for yourself, and

(vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The ALJ found that Plaintiff had less than marked limitation in the domains of acquiring and using information, attending and completing tasks, and caring for yourself; marked limitation in the domain of interacting and relating with others; and no limitation in the domains of moving

5

about and health and physical well-being. (PageID.43–48.) Accordingly, the ALJ found that Plaintiff was not disabled prior to attaining the age of 18.

### B. Adult Disability Claim

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

A claimant must demonstrate that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

Commissioner at step five of the sequential evaluation process, the claimant bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

Plaintiff's adult disability claim failed at the fifth step. At step one, it appears that the ALJ adopted his determination that Plaintiff had not engaged in substantial gainful activity since the date the application was filed. (PageID.48.) At step two, the ALJ found that plaintiff has not developed any new impairment since attaining age 18 and that he has continued to have a severe impairment or combination of impairments. (*Id.*) At step three, the ALJ determined that since attaining age 18, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.45–48.) The ALJ considered Listings 12.04, 12.06, 12.08, 12.10, and 12.11 and applied the "paragraph B" criteria, finding that Plaintiff was mildly limited in the area of understanding, remembering, or applying information; markedly limited in the area of interacting with others; and moderately limited in the areas of concentrating, persisting, or maintaining pace and adapting or managing oneself. (PageID.49–50.)

The ALJ then found that Plaintiff retained the RFC to perform a full range of work at all exertional levels, subject to the following non-exertional limitations:

> the claimant can have occasional interaction with supervisors and coworkers, but no tandem or cooperative tasks and no work involving direct interaction with the public. Claimant can concentrate, persist, and maintain pace to perform simple, routine tasks and make simple, work-related decisions; and can adapt to and tolerate no more than occasional changes in a routine work setting.

(PageID.50.)

At step four, the ALJ determined that Plaintiff has no past relevant work (PageID.56), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of hand packer, industrial cleaner, and laundry worker, approximately 365,000 of which existed in the national economy. (PageID.56–57.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Therefore, the ALJ concluded that Plaintiff was not disabled.

## IV. <u>DISCUSSION</u>

In his appeal, Plaintiff raises one issue concerning the ALJ's determination that Plaintiff was not disabled prior to attaining age 18: the ALJ's findings that Plaintiff's conditions did not cause at least "marked" impairments in the domains of attending and completing tasks and caring for yourself are not supported by substantial evidence. (ECF No. 10 at PageID.68.)

Plaintiff also raises the following arguments concerning denial of his claim for adult SSI benefits: (1) the ALJ's reasons for finding the opinions of the non-examining State agency (DDS) physicians generally persuasive, while discounting the opinion of Plaintiff's case manager, is contrary to 20 C.F.R. § 416.920c(b) and other authority; (2) the RFC determination failed to consider the effects of all Plaintiff's well-documented impairments as required by 20 C.F.R. § 416.920a, SSR 96-8p and SSR 85-15; and (3) the ALJ's conclusions regarding Plaintiff's subjective symptoms are not supported by substantial evidence, 20 C.F.R. § 416.929(c). (*Id.*)

8

A.      **Child's Application for SSI**

As noted, to establish disability based on a functional impairment equal to the listings, Plaintiff was required to show an extreme limitation in one domain or a marked impairment in more than one. Plaintiff contends that he had at least marked limitations in the domains of attending and completing tasks and caring for yourself, and the ALJ's findings of less than marked limitations in those domains are not supported by substantial evidence.

The Social Security Administration (SSA) explains the domain of attending and completing tasks as follows:

> In the domain of "Attending and completing tasks," we consider a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks. We consider the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace. We also consider the child's ability to change focus after completing a task and to avoid impulsive thinking and acting. Finally, we evaluate a child's ability to organize, plan ahead, prioritize competing tasks, and manage time.
>
> The ability to attend and to complete tasks develops throughout childhood, evolving from an infant's earliest response to stimuli, such as light, sound, and movement, to an adolescent's completion of academic requirements. Over time, this evolution can be seen in the steady development of a child's ability to attend and to complete increasingly complex tasks.

SSR 09-4P, 2009 WL 396033, at *2 (Feb. 18, 2009). The regulation provides that, in addition to other things, an adolescent (age 12 to attainment of age 18) should be able to pay attention to increasingly longer presentations and discussions; maintain concentration while reading textbooks; independently plan and complete long-range academic projects; and organize materials and plan time in order to complete school tasks and assignments. 20 C.F.R. § 416.926a(h)(2)(v). Some examples of limitations in this area are being "easily startled, distracted, or overreactive to sounds, sights, movements, or touch" or "slow to focus on, or fail[ing] to complete activities of interest," and "requir[ing] extra supervision to keep you engaged in an activity." *Id.* §

9

416.926a(h)(3). However, these "examples do not necessarily describe a 'marked' or 'extreme' limitation." *Id.*

The ALJ explained his rationale for finding that Plaintiff had less than a marked limitation in attending and completing tasks as follows:

> The claimant's mental impairments in combination influenced his ability to complete tasks and maintain focus. However, the record establishes that the claimant was able to maintain concentration in treatment settings on many occasions. Moreover, claimant and his mother noted that he engaged in several activities that demonstrate his capacity to attend and complete tasks, including going online, making music on his computer, finishing high school, caring for his cats, and doing some chores. I accordingly find that the claimant had less than marked limitation in his ability to attend and complete tasks.

(PageID.45.)

Plaintiff points to evidence in the record supporting at least marked limitations in attending and completing tasks. He notes, for example, that prior to beginning online schooling during his sophomore year of high school, he had an Individualized Education Plan (IEP) that accommodated his inability to remain on task and complete his assignments. (PageID.321–329.) In connection with his 9th grade IEP, Plaintiff's mother reported that while he often completed his homework, he either would not turn it in or would lose it. (PageID.595.) Accommodations provided in Plaintiff's March 2019 IEP included extra monitoring to keep him on task, seating him near the teacher in all academic classes, and allowing him extra time to complete assignments. (PageID.325–26.) Plaintiff further cites his December 2020 hospitalization due to suicide ideation. During his assessment, he fidgeted and was restless and displayed a sad, dysphoric affect; impaired and impulsive judgment and decisionmaking; and diminished intellectual functioning. (PageID.394–95.) Plaintiff also cites his anxiety and depression, which his doctors determined was connected with and exacerbated by his gender dysphoria and hormone replacement therapy for transitioning from male to female. (PageID.452–54.)

10

While this evidence might well support a finding of marked limitation in attending and completing tasks, the ALJ's decision shows that he considered substantially the same evidence but reached a different conclusion. (PageID.40–42, 45.) For example, the ALJ acknowledged that Plaintiff received accommodations pursuant to an IEP while attending school in person and underwent inpatient psychiatric hospitalization in December 2020. (PageID.40–41.) The ALJ also adopted, as consistent with the evidence of record, the opinions of the State agency psychological reviewers that Plaintiff had less than marked limitation in the area of attending and completing tasks (PageID.42–43, 123, 136), which Plaintiff does not attack. Even if the evidence in the record tends in both directions, as it does here, the substantial evidence standard does not permit a reviewing court to independently weigh the evidence. *See Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004) ("We may not reweigh conflicting evidence on appeal, but instead must affirm [the ALJ's] decision because substantial evidence supports it."). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Because the ALJ's finding in this area is supported by substantial evidence, Plaintiff's argument is essentially a request that the Court reweigh the evidence and reach a different conclusion, which it may not do. *See Incorvia v. Comm'r of Soc. Sec.*, No. 1:22-CV-01911, 2023 WL 6519152, at *9 (N.D. Ohio Sept. 20, 2023), *report and recommendation adopted*, 2023 WL 6519082 (N.D. Ohio Oct. 5, 2023) ("As support for finding this impairment severe, Ms. Incorvia merely presents the same evidence the ALJ discussed and requests that this Court reach a different outcome—an impermissible request to reweigh the evidence.").

The domain of caring for yourself inquires how well "you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met

11

in appropriate ways; how you cope with stress and changes in your environment, and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k). Examples of functioning for adolescents include "[d]iscovers appropriate ways to express good and bad feelings (for example, keeps a diary, exercises)," "[s]ometimes feels confused about how he feels about h[im]self," "[b]egins to think about future plans (for example, work)," and "[t]akes medications as prescribed." SSR 09-7p, 2009 WL 396029, at *6 (Feb. 17, 2009). Examples of limitation in this area, which do not necessarily describe a "marked" or "extreme" limitation, include failing to dress or bathe on an age-appropriate basis and engaging in self-injurious behavior or ignoring safety rules. 20 C.F.R. § 416.926a(k)(3)(iii) and (iv). The ALJ found that that Plaintiff had less than marked limitation in this area, explaining:

> The record establishes that claimant has at times engaged in self-harm and experienced passive suicidal ideation. However, the claimant and his mother also acknowledged that he cared for himself in several ways, including preparing simple foods and caring for his personal hygiene overall. After a review of the record as a whole, I find that the claimant had less than a marked limitation in his ability to care for himself.

(PageID.47.)

Plaintiff contends that the ALJ failed to fully consider the evidence relating to this domain. In particular, Plaintiff notes that the ALJ failed to evaluate how his refusal to take his prescribed medication or engage in recommended therapy sessions impacted his ability to care for himself. (PageID.392, 497, 500, 506.) Relatedly, Plaintiff asserts, treatment notes indicate that he was resistant to interventions and not open to suggestions as to how to improve his mental health. (ECF No. 10 at PageID.698 (citing PageID.506 and 653).) Plaintiff further contends that such evidence underscores his impaired judgment and insight into his illnesses. (*Id.*) The Commissioner responds that the ALJ in fact considered Plaintiff's medication usage, noting that they "'were at least somewhat effective in controlling the claimant's symptoms when taken regularly.'" (ECF No. 11

at PageID.710–11.) The Commissioner further contends that the evidence Plaintiff cites fails to undermine the ALJ's conclusions that Plaintiff's medications, when taken, were somewhat effective in controlling his symptoms. (*Id.* at PageID.715.)

Plaintiff's argument has merit. As noted, the regulation provides examples of limitations in this area, including "taking medication as prescribed, . . . making decisions that do not endanger yourself, and knowing when to ask for help from others." 20 C.F.R. §416.926a(k)(1)(iv). While the ALJ did consider Plaintiff's medication usage, he did so in the context of evaluating Plaintiff's subjective symptoms, citing it as a basis to discount his alleged symptoms. (PageID.42.) The Commissioner fails to engage Plaintiff's argument—that the ALJ did not consider Plaintiff's refusal to take medication or receive therapy as evidence of Plaintiff's inability to care for himself. This was the same error at issue in *Malone v. Commissioner of Social Security*, No. 2:15-cv-10226, 2015 WL 9598830 (E.D. Mich. Dec. 9, 2015), *report and recommendation adopted*, 2016 WL 48448 (E.D. Mich. Jan. 5, 2016), which the court found warranted remand. The ALJ in *Malone* considered the claimant's failure to continue therapy as a basis to discount her credibility but did not address how this failure impacted her ability to care for herself. The court determined that this evidence could have weighed against the claimant's abilities to make decisions that did not endanger her and to know when to ask for help from others. *Id.* at *6; *see also Oliver on behalf of D.O. v. Kijakazi*, No. 20 C 4982, 2021 WL 5299788, at *6–7 (N.D. Ill. Nov. 15, 2021) (concluding that the ALJ's statement that the claimant had no limitation in the caring for yourself domain when he took his medication failed to address how or whether the ALJ considered the claimant's "unstable and inconsistent medication regimen" in determining that the claimant had no limitation in this domain). Similarly, here, the ALJ should have considered how Plaintiff's refusal to take his prescribed medication and to engage in therapy impacted his ability to function in this domain.

13

While the ALJ did note that Plaintiff engaged in cutting behavior and suicide ideation at times, he failed to consider how Plaintiff's medication and therapy non-compliance, as well as his resistance to intervention, impacted this domain.

Therefore, the Court will remand this matter to the Commissioner to consider the foregoing issues with respect to the domain of "caring for yourself."

**B.     Adult Disability Claim**

**1.     Opinion Evidence**

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ erred in evaluating the opinion of Amanda Kindig MA LPC, who worked with Plaintiff for about six months on behalf of St. Joseph County Community Mental Health. Ms. Kindig provided a narrative statement, which the ALJ assessed as follows:

> In June 2022, Amanda Kindig, L.P.C., provided a sworn statement as to the claimant's functioning. Ms. Kindig noted that claimant would be absent "at least a third" of the week or month, would not be able to sustain attention even 80% of the day, would have at least 20% of his workday or workweek interrupted by symptoms, could not maintain a consistent pace even 80% of the workday, and could not withstand more than 80% of supervisory critiques or feedback (Ex. B17F). I find this opinion largely unpersuasive in that it is inconsistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living. The evidence supports a finding that the claimant experiences limitations due to his mental impairments in combination; however, this extent of absenteeism and being off-task is unsupported by largely mild to moderate mental status examination findings and claimant's reports of some improvements in functioning and desire to become more independent and find a job (Exs. B12F/4-6; B11F; B12F/8). Moreover, Ms. Kindig has only been a treating provider to the claimant for several months with only several visits in the record; and moreover, as a licensed professional counselor, Ms. Kindig is not an acceptable medical source. Although a non-acceptable medical source's opinion may be used to show the severity of a claimant's impairments and how they affect the ability to function, their opinions are generally found less persuasive when opinions are available from acceptable medical sources (20 CFR 416.913(d) and 416.927).

(PageID.55.)

The ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2) and (3).

The ALJ is to conduct this analysis with regard to all opinions, but is not required to give controlling weight to an opinion from any particular source. The former rule, well-known as "the treating physician rule[, thus] no longer applies." *See Takacs v. Kijakazi*, No. 1:20-cv-02120, 2022 WL 447700, at *9 (N.D. Ohio Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 445767 (N.D. Ohio Feb. 14, 2022). "'Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *13 (E.D. Mich. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).

Plaintiff contends that the ALJ's analysis was flawed because Ms. Kindig had worked with Plaintiff for about six months and was the only medical source to have interacted with Plaintiff on

15

an ongoing basis. He further contends that Ms. Kindig's opinions are consistent with Plaintiff's history of treatment and the overall medical record, as well as with the opinion of consultative examiner Michael Brady, Ph.D., that Plaintiff's ability to withstand normal workplace stressors was markedly impaired. (ECF No. 10 at PageID.701–03.)

Defendant responds that the ALJ articulated sufficient reasons to find Ms. Kindig's opinions inconsistent with the record as a whole, which Plaintiff does not dispute. Defendant further notes that Plaintiff does not challenge the ALJ's evaluation of the prior administrative medical findings—which broadly support the ALJ's RFC finding—as somewhat persuasive, nor does he challenge the ALJ's assessment of Dr. Brady's opinion as only mildly persuasive because it was "somewhat vague" and lacked functional limitations. (ECF No. 11 at PageID.720–21.)

Having reviewed the record, the Court concludes that the ALJ's consistency finding is generally supported by substantial evidence of largely mild-to-moderate mental status examinations and some improvement in functioning. (PageID.560–61, 570, 572, 655.) The ALJ also properly supported his assessment by citing Plaintiff's treatment history and activities of daily living. (PageID.55.) One aspect of the ALJ's analysis, however, is problematic. That is, the ALJ cites Plaintiff's "desire to become more independent and to find a job," as evidence of his motivation and/or ability to work. (PageID.52.) The treatment note shows that Plaintiff was motivated to get a job not simply to make money and become more independent, but so that he could pay for plastic surgery as part of his gender transitioning, specifically, surgery to shorten his legs. (PageID.628, 650.) Michael S. Mattia, M.D., and Kristil Vanderkolk, M.D., the providers who oversaw administration of Plaintiff's gender-transitioning medication, found Plaintiff's expectations about transitioning (including undergoing surgery outside the country to shorten his legs and dropping his weight to between 80-95 pounds) both unrealistic and concerning, so much

so that in September 2021, they informed Plaintiff and his parents that it would be unsafe for him to continue transitioning unless he agreed to seek psychiatric treatment with transition medicine specialists at the University of Michigan. (PageID.573–74, 576–78.) Plaintiff agreed to this condition and eventually abandoned his "unrealistic desires for transition." (PageID.570.) But given that Plaintiff's desire to get a job was actually tied to his unrealistic and perhaps dangerous expectations of the transitioning process, the ALJ failed to contextualize this statement. Whether this evidence was critical to the ALJ's analysis is not clear, but the ALJ should be afforded the opportunity to reassess it on remand.

### 2. Other Issues

Because proof of disability is not so overwhelming to justify remand for an award of benefits, the case will be remanded under sentence four to 42 U.S.C. § 405(g) for further factual findings as set forth above. Although Plaintiff raises additional issues relating to the ALJ's RFC finding and evaluation of his subjective symptoms, including whether Plaintiff's issues that cause marked limitation with social interaction also interfere with his ability to concentrate or sustain activity (ECF No. 10 at PageID.705), the Court need not address these issues as the ALJ may address them on remand.

### **CONCLUSION**

For the reasons stated above, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

An order consistent with this opinion will enter.

Dated: March 20, 2024                        /s/ Sally J. Berens
                                                              SALLY J. BERENS
                                                              U.S. Magistrate Judge